## Birkey *versus* McMakin.

1. Birkey made a note payable to T. who endorsed it; it was afterwards endorsed "J. & B. McMakin." Four years after its maturity and after the death of B. McMakin, it was found amongst his papers. In a suit by J. McMakin as survivor, evidence was given, that B. McMakin directed credit for the amount of the note to be given to an account of defendant against J. & B. McMakin. *Held*, to be evidence of appropriation to that account.

2. Under this evidence, the defendant's book of original entries against B. McMakin and J. & B. McMakin were evidence.

3. The endorsement "J. & B. McMakin," and the note being found in possession of B. McMakin, were evidence that the note belonged to him and he had the right to make the appropriation.

4. The note was unclaimed in the possession of B. McMakin for four years after maturity and until after his death. *Held*, to be corroborative of the ownership of B. McMakin and of his appropriation to the accounts.

March 1st 1870. Before READ, AGNEW and SHARSWOOD, JJ. THOMPSON, C. J., at Nisi Prius.

Error to the District Court of *Philadelphia:* Of January Term 1869.

This was an action of assumpsit, brought January 4th 1868, by Joseph B. McMakin, who survived Benjamin McMakin, they having been partners under the firm of J. & B. McMakin, against William J. A. Birkey.

The suit was on the following note:—

"$300                          Philadelphia, July 24th 1863.
Ninety days after date, I promise to pay to the order of Dr. Samuel Tucker, three hundred dollars, without defalcation, value received.                          WM. J. A. BIRKEY.
   (Endorsed)   SAMUEL TUCKER, M..D.
               J. & B. McMAKIN."

On the trial, before Hare, P. J., the plaintiff, having given the note in evidence, rested.

The defendant called William Birkey, his son, who testified that the plaintiff told him he had known nothing of the note till after the death of Benjamin; whose daughter had told him that she had found it in her father's pocket-book after his death; the endorsement, "J. & B. McMackin," is the writing of Benjamin. There were twelve notes, commencing January 5th 1860, each at 90 days for $300; each note was given to take up a preceding one; all had been delivered to Benjamin and had been returned by him, except one which was missing and for which he gave a receipt, October 9th 1860, which was the day the note fell due. "When the last note was due, Benjamin said, It is not necessary to renew it; I have it; give credit on my account. The account we have against him and his brother. The words were, 'against me and

[Birkey *v.* McMakin.]

my family;' he said, charge it to his account. He told me, if any of his family came, charge it to his account."

The plaintiff then proved books, which were produced, to be his books of original entries. The books contained charges against "Joseph McMakin," and "Benjamin McMakin" from 1856 to 1859; against "Captains Joseph and Benjamin McMakin," from 1859 to November 1860; against "Captains McMakin," from 1861 to December 1864," and against "Captains J. & B. McMakin," from January 2d 1865 to October 1866.

William Birkey, being recalled, testified :—

" I know the defendant got the money; he received it from Capt. Benjamin McMakin. The first note was discounted in bank, and my father got the money. So far as I know, all the notes, including the last, were in bank."

The defendant then offered the books in evidence; their admission was objected to; they were rejected, and a bill of exceptions sealed.

The court instructed the jury to find for the plaintiff. The verdict was for the plaintiff for $380.75.

Judgment having been entered on the verdict, the defendant took a writ of error. He assigned for error the rejection of his offers of evidence, and the instructions of the court.

*G. M. Eldridge* and *D. Paul Brown*, for plaintiff in error, cited Hodge *v.* Comly, 2 Mo. 286.

*H. Hanson* (with whom was *D. Dougherty*), for defendant in error.—The endorsement showed that the note was J. & B. McMakin's, the contrary could not be proved by parol: Harbold *v.* Kuster, 8 Wright 392. A partner cannot have an individual debt charged against the firm: Purdy *v.* Bowers, 6 Barr 492; King *v.* Faber, 10 Harris 21. The set-off and the claim were in different rights: Walker *v.* Eyth, 1 Casey 216; Milliken *v.* Gardner, 1 Wright 456.

The opinion of the court was delivered, March 7th 1870, by

SHARSWOOD, J.—The note in suit fell due in October 1863, and according to the testimony of William Birkey: "When the last note was due, Benjamin said, It is not necessary to renew it; I have it; give credit on my account. The account we have against him and his brother. The words were ' against me and my family;' he said charge it to his account." This was evidence of an appropriation by Benjamin McMakin at that time, of the amount of this note to the payment or extinguishment of whatever he then owed the maker, and perhaps also of what he and his brother owed jointly; for the jury might well have inferred an acknowledgment of a liability on a joint account, for services

[Birkey *v.* McMakin.]

rendered to each member of the firm severally. It ought to have gone to the jury as such; for at that time the bar of the statute had not run against the claim. We think, therefore, that the book entries proved by the oath of the defendant against Benjamin McMakin, and Captains J. & B. McMakin, and Captains McMakin, ought to have been received to show a set-off, which would be available, if the jury believed that the note in suit was the separate property of Benjamin. There can be no doubt that there was evidence of this. But the court below appear to have thought that it contradicted the endorsement—"J. & B. McMakin."

This endorsement was shown to have been in the handwriting of Benjamin McMakin, and as it appears to us so far from contradicting it rather confirmed the theory of the defence. It showed primâ facie that J. & B. McMakin had assigned their interest or title in the note, and why not to one of the members of the firm as well as a stranger? If then Benjamin McMakin was the owner of the note when it fell due he had a perfect and unquestionable right to direct the appropriation of it to the payment of any debt due by him, or due by himself and brother to the maker. The fact that it remained unclaimed for more than four years after maturity and until after the death of Benjamin McMakin, and was found by his daughter in her father's pocket-book with other papers, tended strongly to corroborate the defence.

Judgment reversed, and *venire facias de novo* awarded.